IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


ALLYSON FRANCES WRIGHT,   Case No. 6:16-cv-01529-JR

        Plaintiff,   OPINION AND ORDER

  v.

NANCY BERRYHILL, Acting
Commissioner, Social Security
Administration,

        Defendant.

RUSSO, Magistrate Judge:

    Plaintiff Allyson Wright brings this action for judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying her application for Title II Disability Insurance Benefits ("DIB") under the Social Security Act ("Act"). All parties have consented to allow a Magistrate Judge enter final orders and judgment in this case in accordance with Fed. R. Civ. P. 73 and 28 U.S.C. § 636(c). For the reasons set forth below, the Commissioner's decision is reversed and remanded for further proceedings.

## PROCEDURAL BACKGROUND

In December 2012, plaintiff applied for DIB alleging disability as of September 1, 2008. Tr. 65-73. After an initial denial, plaintiff filed for reconsideration and was again denied. Tr. 76-87. On November 20, 2014, plaintiff and a vocational expert ("VE") testified at a hearing before an Administrative Law Judge ("ALJ"). Tr. 28-64. On February 11, 2015, the ALJ issued a decision finding plaintiff not disabled under the Act. Tr. 10-21. After the Appeals Council denied plaintiff's request for review, she filed a complaint in this Court.

## STATEMENT OF FACTS

Born on April 14, 1959, plaintiff was 49 years old on the alleged onset date and 52 years old on the date last insured ("DLI"). Tr. 65. Plaintiff previously worked as a copywriter, freelance writer, and graduate teaching fellow at the University of Oregon. Tr. 155. Plaintiff graduated college and nearly completed a master's degree. Tr. 34. Plaintiff alleges disability due to: bipolar II disorder, borderline personality disorder, depression, anxiety, fibromyalgia, migraines, degenerative joint disease, pain disorder, osteoarthritis, and lumbar radiculopathy. Tr. 65.

## STANDARD OF REVIEW

The court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (citation and internal quotations omitted). The court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusions." Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986).

Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is rational. Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).

The initial burden of proof rests upon the claimant to establish disability. Howard v. Heckler, 782 F.2d 1484, 1486 (9th Cir. 1986). To meet this burden, the claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C § 423(d)(1)(A).

The Commissioner has established a five-step sequential process for determining whether a person is disabled. Bowen v. Yuckert, 482 U.S. 137, 140 (1987); 20 C.F.R. § 404.1520. First, the Commissioner determines whether a claimant is engaged in "substantial gainful activity." Yuckert, 482 U.S. at 140; 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled.

At step two, the Commissioner evaluates whether the claimant has a "medically severe impairment or combination of impairments." Yuckert, 482 U.S. at 140-41; 20 C.F.R. § 404.1520(c). If the claimant does not have a severe impairment, she is not disabled.

At step three, the Commissioner determines whether the claimant's impairments, either singly or in combination, meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." Yuckert, 482 U.S. at 140-41; 20 C.F.R. § 404.1520(d). If so, the claimant is presumptively disabled; if not, the Commissioner proceeds to step four. Yuckert, 482 U.S. at 141.

At step four, the Commissioner resolves whether the claimant can still perform "past relevant work." 20 C.F.R. § 404.1520(f). If the claimant can work, she is not disabled; if she cannot perform past relevant work, the burden shifts to the Commissioner. At step five, the Commissioner must establish that the claimant can perform other work existing in significant

numbers in the national or local economy. Yuckert, 482 U.S. at 141-42; 20 C.F.R. § 404.1520(g).

## THE ALJ'S FINDINGS

At step one of the five step sequential evaluation process outlined above, the ALJ found plaintiff had not engaged in substantial gainful activity since September 1, 2008, her alleged onset date. Tr. 12. At step two, the ALJ determined the following impairments were medically determinable and severe: "cervical spine degenerative disc disease, obesity, asthma, fibromyalgia, depressive disorder, and anxiety disorder." Id. At step three, the ALJ found plaintiff's impairments, either singly or in combination, did not meet or equal the requirements of a listed impairment. Tr. 13.

Because she did not establish presumptive disability at step three, the ALJ continued to evaluate how plaintiff's impairments affected her ability to work. The ALJ resolved that plaintiff had the residual functional capacity ("RFC") to perform a limited range of light work:

> She could lift 20 pounds occasionally and 10 pounds frequently. She could sit, stand, and walk at least 6 hours each in an 8-hour day for a combined total of 8 hours of activity with the customary breaks every 2 hours. She required the option to change positions once an hour from seated to standing while still performing essential tasks. She could never climb ladders, ropes, or scaffolds and had to avoid exposure to workplace hazards, such as unprotected heights and large moving equipment. She had to avoid concentrated exposure to inhaled irritants. She could occasionally reach overhead. She had no limit on her ability to climb ramps and stairs or balance. She could occasionally stoop, crouch, crawl, and kneel. She could understand, remember, and carry out simple instructions with no more than occasional public contact.

Tr. 14-15.

At step four, the ALJ determined plaintiff could not perform any past relevant work. Tr. 20. At step five, the ALJ concluded, based on the VE's testimony, that there were a significant

number of jobs in the national and local economy that plaintiff could perform despite her impairments, such as office helper, in-home care companion, and laundry sorter. Tr. 20-21.

## DISCUSSION

Plaintiff argues the ALJ erred by: (1) omitting migraines as a severe impairment at step two; (2) discrediting her subjective pain testimony; and (3) assigning no weight to her treating physicians.

### I. Step Two Finding

Plaintiff contends the ALJ erred by omitting migraines as a severe impairment at step two. Step two requires the ALJ to assess the claimant's alleged impairments to determine if any impairment is both medically determinable and severe. 20 C.F.R. § 404.1520(c). An impairment is severe if it has "more than a minimal effect on the ability to do basic work activities." Webb v. Barnhart, 433 F.3d 683, 686 (9th Cir. 2005) (citation and internal quotations omitted). An impairment is medically determinable if it is diagnosed by an acceptable medical source and can be confirmed by "signs, symptoms, and laboratory findings." Ukolov v. Barnhart, 420 F.3d 1002, 1005 (9th Cir. 2005) (citation and internal quotations omitted). Step two is a "de minimis screening device to dispose of groundless claims." Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996) (citing Yuckert, 482 U.S. at 153-54).

Plaintiff sought treatment for migraine-related symptoms on multiple occasions prior to her DLI. Tr. 511-20, 552, 742, 743, 753. Specifically, in March 2009, plaintiff visited her primary care physician, Delta Ruscheinsky, M.D., for migraines. Tr. 753. In March 2011, plaintiff obtained care from neurosurgeon Robert Choi, M.D., and underwent an MRI later that month with unremarkable results. Tr. 743, 1177. In April 2011, plaintiff presented to urgent care for treatment of a migraine accompanied with nausea and vomiting. Tr. 516-20. In May

2011, plaintiff met with Dr. Ruscheinsky for treatment of her migraines. Tr. 742. Dr. Ruscheinsky thereafter referred plaintiff to another neurosurgeon, Stephen McGirr, M.D., who reviewed an MRI of plaintiff's cervical spine and determined plaintiff had some "spinal cord compromise" that was "mild to moderate." Tr. 554. In June 2011, plaintiff received an epidural steroid injection for her migraine pain. Tr. 511-14. In August 2011, plaintiff visited urgent care for a migraine with nausea and vomiting. Tr. 515-20. Within the next month, plaintiff consulted with Dr. McGirr to discuss potential fusion surgery of her cervical spine at C4-5 and C5-6, the "compromise" of which plaintiff believed was contributing to her head and neck pain. Tr. 550. In September 2011, plaintiff met with Dr. Ruscheinsky for treatment of migraines prior to the DLI. Tr. 738. Although plaintiff's surgery occurred immediately after the DLI, she underwent surgery on her neck in October 2011 in an attempt to relieve her migraine symptoms. Tr. 523.

The ALJ acknowledged the aforementioned evidence but concluded plaintiff's migraines were non-severe[1] because they did not "occur for the requisite 12 consecutive months through the date last insured." Tr. 13. Notably, the ALJ pointed to the two-year gap in treatment between March 2009 and March 2011. Id. In addition, the ALJ noted plaintiff's reports that her migraine symptoms resolved following her October 2011 surgery. Tr. 16. Regardless, the ALJ listed numerous severe impairments at step two and continued the sequential evaluation process. Tr. 12.

Even assuming the ALJ erred at step two, such an error was harmless because the ALJ considered plaintiff's migraines when assessing her RFC. Tr. 14-19; see also Burch, 400 F.3d at 682-84 (omission of an allegedly severe impairment at step two is harmless if step two is decided

---

[1] While the ALJ did not expressly categorize plaintiff's migraines as medically determinable, it is clear from both the context and plain language of the ALJ's decision that plaintiff's migraines were, in fact, construed as medically determinable and therefore were explicitly considered in formulating the RFC. Tr. 13-21.

Page 6 - OPINION AND ORDER

in the claimant's favor and the omitted impairment is considered while formulating the RFC). Reversal is not warranted on this issue.

## II. Plaintiff's Testimony

Plaintiff argues the ALJ erred by discrediting her subjective pain testimony. When a claimant has medically documented impairments that could reasonably be expected to produce some degree of the symptoms complained of, and the record contains no affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of . . . symptoms only by offering specific, clear and convincing reasons for doing so." Smolen, 80 F.3d at 1281 (internal citation omitted). A general assertion that the claimant is not credible is insufficient; the ALJ must "state which . . . testimony is not credible and what evidence suggests the complaints are not credible." Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993). The reasons proffered must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." Orteza v. Shalala, 50 F.3d 748, 750 (9th Cir. 1995) (internal citation omitted). Thus, in formulating the RFC, the ALJ is not tasked with "examining an individual's character" or propensity for truthfulness, and instead assesses whether the claimant's subjective symptom statements are consistent with the record as a whole. SSR 16-3p, available at 2016 WL 1119029. If the ALJ's finding regarding the claimant's subjective symptom testimony is "supported by substantial evidence in the record, [the court] may not engage in second-guessing." Thomas v. Barnhart, 278 F.3d 947, 959 (9th Cir. 2002) (internal citation omitted).

At the hearing, plaintiff testified she suffered from severe back and neck pain, along with migraines, during the relevant period. Tr. 37. As a result, plaintiff stated she could sit for 30 minutes, stand for 45 minutes, and walk for 15 minutes at one time. Tr. 37-38. Further, plaintiff

explained her migraines lasted between four to nine days and typically ranged from seven to ten (on a pain scale ranging from one to ten), requiring daily pain killers and muscle relaxers. Tr. 36, 51. Plaintiff also remarked she needed to lie down all day during 67% of the days in 2011. Tr. 38.

After summarizing her hearing testimony, the ALJ determined that plaintiff's medically determinable impairments could reasonably be expected to produce some degree of symptoms, but her statements regarding the extent of these symptoms were not fully credible due to her: (1) work activity during the adjudication period; (2) improvement after surgery; (3) failure to report or seek treatment for her allegedly disabling impairments; (4) unremarkable exams; and (5) presentation at counseling sessions. Tr. 15-17.

Specifically, the ALJ pointed to inconsistencies between plaintiff's hearing testimony and her subjective reports to medical providers. Tr. 17. Inconsistencies between a claimant's hearing testimony and the medical record constitutes a legally sufficient reason for discrediting subjective pain testimony. Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003). Substantial evidence supports the ALJ's conclusion as to this issue. At the hearing, plaintiff asserted that her migraine pain subsided but did not disappear after her October 2011 surgery. Tr. 51. Conversely, plaintiff told Dr. McGirr in November 2011 that she was "ecstatic" her migraines were completely gone post surgery. Tr. 547. Moreover, in January 2012, plaintiff reported to Dr. Ruscheinsky she was "thrilled" her migraines had gone away. Tr. 722.

In addition, the ALJ resolved that plaintiff's work activity and job search undermined her subjective symptom statements. Tr. 17. An ALJ can discredit a claimant's subjective pain testimony if she participates in "activities indicating capacities that are transferrable to a work setting." Molina v. Astrue, 374 F.3d 1104, 1113 (9th Cir. 2012); see also Carter v. Astrue, 472

Fed.Appx. 550, 552 (9th Cir. 2012) (affirming the ALJ's adverse credibility finding where the claimant "worked part-time for nearly another year after his alleged disability onset date"); Bray v. Astrue, 554 F.3d 1219, 1221, 1227 (9th Cir. 2009) (affirming the ALJ's adverse credibility finding where the claimant "recently worked [part-time] as a personal caregiver for two years, and has sought other employment since then"). Plaintiff worked as a freelance copywriter through 2010, two years after the alleged disability onset date. Tr. 182-83. Further, plaintiff sought employment and attended a job interview after she stopped performing freelance work. Tr. 1168, 1170.

The ALJ also found that plaintiff lacked credibility with regard to her subjective symptom testimony because she sought minimal treatment for migraines prior to 2011. Tr. 15-16. An ALJ may consider a claimant's failure to report symptoms in making an adverse credibility finding. Greger v. Barnhart, 464 F.3d 968, 972 (9th Cir. 2006). Similarly, an ALJ may consider the lack of supporting objective medical evidence in "determining the severity of the claimant's pain." Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001). As noted in section I, plaintiff only sought treatment one time for migraine-related symptoms between the alleged onset date and March 2011. Tr. 753. Moreover, plaintiff visited Dr. Ruscheinsky in 2010 but made no mention of headaches. Tr. 750.

In sum, the ALJ provided clear and convincing reasons, supported by substantial evidence, for rejecting plaintiff's subjective symptom testimony. As such, this Court need not discuss all of the reasons provided by the ALJ because at least one legally sufficient reason exists. Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1162-63 (9th Cir. 2008). The ALJ's evaluation of plaintiff's testimony is affirmed.

### III.     Medical Evidence

Plaintiff asserts the ALJ erred by giving no weight to any of her four treating physicians: James Morris, M.D., Miguel Estevez, M.D., Sharon Flynn, M.D., and Dr. Ruscheinsky. The opinion of a treating physician is given controlling weight if it is consistent with the record and supported by clinical findings. Holohan v. Massanari, 246 F.3d 1195, 1202 (9th Cir. 2001); 20 C.F.R. § 404.1527(c)(2). Even if the treating physician's opinion is not entitled to controlling weight, an ALJ must provide clear and convincing reasons, supported by substantial evidence, for rejecting that physician's opinion. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). If a treating physician's opinion is contradicted by another physician or the record, the ALJ must provide specific and legitimate reasons for entitling that opinion no weight. Id.

#### A.     Dr. Morris

In August 2012, plaintiff began treatment with Dr. Morris for pain management. Tr. 599. In his initial reports, Dr. Morris believed plaintiff to be medically disabled. Tr. 604. Dr. Morris continued working with plaintiff through September 2014. Tr. 1021. In March and September 2014, Dr. Morris wrote letters indicating plaintiff was disabled "for more than a year and . . . her condition is permanent and she will be unable to work in the future." Tr. 837, 839.

The ALJ gave Dr. Morris's opinion no weight because he did not treat plaintiff during the relevant time period. Tr. 18. Additionally, the ALJ stated there was no evidence Dr. Morris reviewed plaintiff's pre-DLI records. Tr. 18. An ALJ need not accept the opinion of a treating physician if the treating relationship was initiated after the relevant time period and the opinion is not offered retrospectively. Morgan v. Colvin, 2013 WL 6074119, *10 (D. Or. Nov. 13, 2013) (citations omitted).

Initially, Dr. Morris does not clearly define when plaintiff's disability began. There is no apparent overlap between plaintiff's DLI and Dr. Morris's letters. Although Dr. Morris received reports from Dr. Ruscheinsky, the record does not reflect that he reviewed plaintiff's medical history in depth. Tr. 599. Moreover, Dr. Morris did not begin treating plaintiff until one year after the DLI. In sum, Dr. Morris likely knows a great deal about plaintiff's symptoms from August 2012 through September 2014; however, there is no indication from his opinion that plaintiff was disabled prior to the September 2011 DLI. The ALJ's decision is affirmed as to this issue.

### B. Dr. Estevez

In June 2012, plaintiff commenced care with Oregon Neurology Associates. Tr. 1030. In October 2013, Dr. Estevez, a provider at Oregon Neurology Associates, started treating plaintiff. Tr. 1042. Within the next year, plaintiff visited Dr. Estevez five times for her chronic migraine disorder. Tr. 1064, 1070, 1075, 1080, 1085. In an undated letter, Dr. Estevez opined: "given the frequency of headaches [plaintiff] is not able to perform any job for even a 4 hour work day." Tr. 838.

The ALJ rejected Dr. Estevez's statement because it only related to the treatment he provided between October 2013 and August 2014. Tr. 19. As previously mentioned, the opinion of a treating physician can be rejected if it is not retrospective and there is no treatment relationship during the relevant time period. Morgan, 2013 WL 6074119 at *10. Here, although Dr. Estevez diagnosed plaintiff with chronic migraines, there is no indication that he reviewed plaintiff's medical records relating to the adjudication period. Further, Dr. Estevez failed to specify when plaintiff's chronic migraines began and his opinion is not retrospective. The ALJ's rejection of Dr. Estevez's opinion is upheld.

### C. Dr. Flynn

In April 2013, plaintiff initiated treatment with a new primary care physician, Dr. Flynn. Tr. 734. Although no treatment relationship existed at the time[2], Dr. Flynn opined in November 2012 that plaintiff was debilitated by pain. Tr. 220.

The ALJ afforded Dr. Flynn's opinion no weight due to the lack of treatment during the relevant time period. Tr. 18. As noted in sections III(A) and (B), it is legally sufficient to discredit a treating physician's opinion if it is not retrospective and treatment does not correspond to the adjudication period. Morgan, 2013 WL 6074119 at *10. According to the record, Dr. Flynn began treating plaintiff in April 2013 and her November 2012 opinion offered no retrospective analysis. Tr. 734. The ALJ's decision is affirmed in this regard.

### D. Dr. Ruscheinsky

In 2004, Dr. Ruscheinsky became plaintiff's primary care provider. Tr. 38. In September 2011, Dr. Ruscheinsky opined that "[plaintiff] has been suffering from daily intractable, severe pain for greater than 1 year due to degenerative disc disease, spinal stenosis and headaches." Tr. 219. Dr. Ruscheinsky concluded that "[plaintiff] has been unable to work for [sic] past year." Id.

The ALJ afforded Dr. Ruscheinsky's opinion no weight because: (1) it was based solely on plaintiff's subjective complaints; (2) during 2011 she only saw plaintiff twice; and (3) it is not supported by her own clinical findings. Tr. 18.

As to the ALJ's first reason, an ALJ cannot reject a treating physician's opinion by questioning the claimant's credibility where, as here, "the doctor does not discredit those

---

[2] It is undisputed that plaintiff's care with Dr. Flynn began in 2013. It is unclear from the record why Dr. Flynn's opinion letter is dated November 2012; however, she is a provider with Oregon Medical Group, the same organization as Dr. Ruscheinsky.

Page 12 - OPINION AND ORDER

complaints and supports [her] ultimate opinion with [her] own observations." Ryan v. Comm'r Soc. Sec. Admin., 528 F.3d 1194, 1199-1200 (9th Cir. 2008). Dr. Ruscheinsky treated plaintiff throughout the relevant period and, as discussed in greater detail below, there is no indication Dr. Ruscheinsky's reports are based on anything other than her own observations. Additionally, Dr. Ruscheinsky never questioned the credibility of plaintiff's complaints.

As to the second justification, the ALJ mischaracterizes the record. While it is true that plaintiff only saw Dr. Ruscheinsky twice in 2011 prior to the DLI, she saw Dr. Ruscheinsky in March of 2009 and 2010, both during the relevant period. Tr. 750, 753. Moreover, Dr. Ruscheinsky was plaintiff's primary care provider and referred plaintiff to many of the specialists plaintiff visited during the adjudication period, one of whom determined that surgery was required. Tr. 550. It can be inferred that Dr. Ruscheinsky obtained and reviewed the records of these specialists in rendering her opinion.

Turning to the third justification, Dr. Ruscheinsky's opinion is supported by her own examinations as well as the clinical findings of other physicians, including Dr. McGirr's MRI, which revealed mild to moderate spinal cord compression and stenosis. Tr. 554; see also Dahl v. Comm'r, 2015 WL 5772060, *5 (D. Or. Sept. 30, 2015) (even mild degenerative disc disease can be disabling) (collecting cases). Therefore, the ALJ committed harmful legal error in evaluating Dr. Ruscheinsky's opinion.

## IV.  Remedy

The decision whether to remand for further proceedings or for the immediate payment of benefits lies within the discretion of the court. Harman v. Apfel, 211 F.3d 1172, 1176-78 (9th Cir. 2000). The issue turns on the utility of further proceedings. A remand for an award of benefits is appropriate when no useful purpose would be served by further administrative

proceedings or when the record has been fully developed and the evidence is insufficient to support the Commissioner's decision. Treichler v. Comm'r of Soc. Sec. Admin., 775 F.3d 1090, 1099-1100 (9th Cir. 2014). The court may not award benefits punitively and must conduct a "credit-as-true" analysis on evidence that has been improperly rejected by the ALJ to determine if a claimant is disabled under the Act. Strauss v. Comm'r of the Soc. Sec. Admin., 635 F.3d 1135, 1138 (9th Cir. 2011); see also Dominguez v. Colvin, 808 F.3d 403, 407-08 (9th Cir. 2015) (summarizing the standard for determining the proper remedy).

As discussed herein, the ALJ erred by failing to provide a legally sufficient reason, supported by substantial evidence, for rejecting Dr. Ruscheinsky's opinion. The record before this Court is nonetheless ambiguous regarding the extent of plaintiff's allegedly disabling impairments. On the one hand, plaintiff only sought treatment for headaches one time between September 2008, the alleged onset date, and March 2011. Additionally, plaintiff continued working through 2010. On the other hand, plaintiff sought extensive treatment for her pain symptoms throughout 2011, including surgery. The record demonstrates that plaintiff's migraines increased in severity sometime after the alleged onset date, but it is unclear if and/or when those symptoms became disabling.

Accordingly, further proceedings are required to resolve this case. Upon remand, the ALJ must reconsider migraines at step two and reformulate plaintiff's RFC, and obtain additional VE testimony, if necessary.

## CONCLUSION

For the reasons stated above, the Commissioner's decision is REVERSED and REMANDED for further proceedings consistent with this opinion.

IT IS SO ORDERED.

DATED this 7th day of August 2017.

                                                s/Jolie A. Russo
                                                JOLIE A. RUSSO
                                                United States Magistrate Judge